70540, 70541. THE STATE v. SCOTT et al.; and vice versa.
(339 SE2d 276)

BEASLEY, Judge.
This appeal and cross-appeal are the result of the trial court's partial grant of defendants' motion to suppress evidence.

Law enforcement officials in Tift County were apprised that defendant Scott, a fugitive from North Carolina, was suspected to be in the county. GBI Agent Rakestraw received information from an undercover agent that Scott could be apprehended at Angelia Johnson's residence known as the "cabin in the pines." He was also informed that a black male known only as "Ricky" was at the residence and that a loaded .44 caliber rifle was kept by the front door of the house. An arrest warrant for Scott was obtained and also a search warrant for the premises of Angelia Johnson in order to search for Scott. The warrant also included a "no knock provision" permitting officers to enter without knocking. Having obtained the necessary warrants, Agent Rakestraw, the Sheriff of Tift County and several members of his department went to Angelia Johnson's residence at approximately 1:00 a.m. on September 16, 1984.

The officers did knock and announce their presence. When at first no one opened the door a deputy attempted to kick the door open but failed. Scott then opened the door and after threatening and cursing the officers was taken into custody and removed from the house. At the same time Angelia Johnson appeared in the front room dressed in short pajamas. She was permitted to obtain a housecoat and then was seated at the dining room table and watched by a deputy. There was no rifle by the front door and the remainder of the house was dark. Although no one responded to loud inquiries by the officers and Angelia denied anyone else was at home, Agent Rakestraw was concerned about the rifle and the expected presence of a third individual living in the house. Consequently, he and others

walked through the house to secure it. In the course of that search, several partially burned marijuana cigarettes were seen in ashtrays on the bedside table in Angelia Johnson's bedroom and on the dresser in the other bedroom. Also seen standing between a bookcase and the wall was the .44 rifle, cocked. When the officer picked it up to disengage it, he saw that the identification (serial number) had been ground off. Based on what had been seen openly, Agent Rakestraw decided to expand the search and after informing Angelia Johnson the officers proceeded to thoroughly search the entire house. Closets, closed boxes and containers produced additional drugs. As the officers were about to leave, defendant Ricky Wilson, the absent occupant, arrived at the house and was promptly arrested.

The defendants Scott, Wilson and Angelia Johnson (who withdrew as a party appellant) were charged with possession of the various drugs and the firearm. Their motion asked for the suppression of the seized items and asserted that defendants had automatic standing to challenge the validity of the searches because the seized items would be used against them at trial.

After a lengthy evidentiary hearing on the motion, the court entered an order which recited basically the above facts. In addition the court found that Angelia Johnson and defendant Wilson lived at the residence which was searched, but that defendant Scott, who while a fugitive had been staying at the residence off and on, had little or no control over the premises or who was invited to visit them.

The trial court concluded that defendants had automatic standing to contest the validity of the searches; that the seizure of the contraband which was in plain sight was proper; that no exigency existed which justified an expanded search of the house so that all items seized as a result of this second search should be suppressed.

In 70540 the state appeals and contends that because of the items found during the limited search for the purpose of securing the house the second general and extensive search was permissible. In 70541 the defendants appeal and argue that not only was the second search improper but the first search also violated their federal constitutional rights and it was error not to suppress the items seized as a result of that search.

1. In holding that the defendant had standing the trial judge relied on *Jones v. United States*, 362 U. S. 257 (80 SC 725, 4 LE2d 697) (1960) and Georgia cases which applied that decision to the effect that where possession is an essential element of the offense charged, a defendant has automatic standing to challenge the search's validity. However, the *Jones* concept was undermined in *Rakas v. Illinois*, 439 U. S. 128, 134 (99 SC 421, 58 LE2d 387) (1978) and overruled in *United States v. Salvucci*, 448 U. S. 83, 85 (100 SC 2547, 65 LE2d 619) (1980). The correct standard as expressed in *Salvucci* is

"not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." Id. at 93. The courts of this state have applied the applicable principles in post *Salvucci* decisions. See, e.g., *Graham v. State*, 171 Ga. App. 242, 246 (319 SE2d 484) (1984); *Smallwood v. State*, 171 Ga. App. 784, 785 (321 SE2d 118) (1984); *Sims v. State*, 251 Ga. 877, 882 (311 SE2d 161) (1984).

Thus the inquiry focuses directly on whether the defendant had a reasonable expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U. S. 98, 104 (100 SC 2556, 65 LE2d 633) (1980). "Factors to be considered in evaluating whether a justifiable expectation of privacy exists include whether the accused has a right to exclude others from the place searched; whether he has a possessory interest in the items seized; and whether he took normal precautions to maintain the privacy and security of the items seized." *Sims v. State*, supra at 882 (6), and cases cited therein. Applying these factors to the trial court's findings, as supported by the evidence, Scott showed no justifiable expectation of privacy and may not contest the search. He was merely a guest who came and went at irregular intervals and had neither a proprietary nor a possessory interest in the premises. *Dennis v. State*, 166 Ga. App. 715, 717 (305 SE2d 443) (1983). Defendant Wilson as a resident of the searched premises, his home, did have a reasonable expectation of privacy in such area and the remaining issues are addressed as to him. *Wilson v. State*, 254 Ga. 473, 477 (3) (330 SE2d 364) (1985).

2. The trial court properly denied the suppression of items seen in plain view during the first search, which was made to insure that no one was in the home who might pose a security risk to the officers. *Lentile v. State*, 136 Ga. App. 611, 613 (1) (222 SE2d 86) (1975); *Dennis v. State*, 166 Ga. App. 715, 717, supra. The reasonably-based belief that another occupant was present at this time of night and had access to a rifle which was then not accounted for, justified the protective sweep to assure that no one would shoot at the officers as they were leaving.

3. Did the finding of contraband during the first search furnish a legal basis for conducting the second search?

The fact that contraband was present in the house may well furnish probable cause for the issuance of a search warrant obtained after a hearing before a magistrate. But probable cause alone is not enough to act without one. The second extensive search far exceeded the scope of the warrant originally obtained. The officers, under the circumstances here, could secure the premises and also seize what was in plain sight in such process.

Recently we held that a detailed warrantless search of the area which was previously within the control of the persons arrested was

permissible. See *State v. Camp*, 175 Ga. App. 591 (333 SE2d 896) (1985). Exigent circumstances arose, excusing the officers from having to stop and attempt to locate a magistrate late at night. However, there we noted the prohibition against general exploratory no-warrant searches of an entire residence. The intrusive search in *Camp* was confined to the immediate area from which had come the drugs for the sale.

To permit the search here would be to invite unwarranted license. The requisite element for entry into the premises to arrest Scott was obtained. As an incident to his arrest the limited security search of the premises, which was justified by the reasonable belief that safety was in jeopardy, does not violate federal constitutional prohibitions. While conducting this search, which was incident to the execution of the search and arrest warrants, contraband items seen in plain view were legally seized. *Lush v. State*, 168 Ga. App. 740, 741 (1) (310 SE2d 287) (1983). However, utilization of those items for a warrantless exploratory search exceeded authority when no exigency was present which would necessitate departure from the requirement for a warrant. The contraband seized was neither in plain view nor discovered inadvertently. See *McDade v. State*, 175 Ga. App. 204, 207 (3) (332 SE2d 672) (1985).

The Supreme Court recently expressed the principles that the right to search is limited, in a case involving a search as a part of the investigation of the cause of a fire. "An administrative search into the cause of a recent fire does not give fire officials license to roam freely through the fire victim's private residence." *Michigan v. Clifford*, 464 U. S. 287, 298 (104 SC 641, 78 LE2d 477) (1984). Thus, in this case the fact that contraband was discovered in plain view during a limited search of the premises does not serve to permit the police to "roam freely" in an intrusive and thorough search of the entire premises.

There is no merit to the argument that the second search should be sustained under the principles pronounced in *United States v. Leon*, 468 U. S. ___ (104 SC 3403, 82 LE2d 677) (1984). The line of cases exemplified by *Leon* involve defective search warrants and officers who were acting in good faith reliance that they had authority under the warrants. There has been no application of a similar rule involving officers who purportedly acted on the basis that in good faith they could proceed without a warrant, and we have no authority to extend *Leon* to such a situation.

There is likewise no ground to sustain the search and seizure on the doctrine of inevitable discovery (*Nix v. Williams*, ___ U. S. ___ (104 SC 281, 81 LE2d 377) (1984)) since the state did not establish by a preponderance of the evidence that the evidence would have ultimately and inevitably been discovered by lawful means.

The trial court correctly sustained the motion to suppress regard-

ing items obtained by the second search.

*Judgment affirmed as to defendant Wilson on main appeal and reversed as to defendant Scott. Judgment affirmed on cross-appeal. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 29, 1985 —
REHEARING DENIED NOVEMBER 20, 1985 —

David E. Perry, District Attorney, Robert C. Wilmot, Assistant District Attorney, for appellant.

C. Paul Bowden, for appellees.