## 72335. SANDERS v. THE STATE.
(351 SE2d 666)

BEASLEY, Judge.

Sanders appeals from the conviction and sentence for possession of cocaine with intent to distribute, OCGA § 16-13-30 (b).

1. At trial he moved to suppress evidence of contraband seized in a residence, in an automobile, and from his person. His grounds were that the searches and seizures violated the United States Constitution, Amendments Four, Five, and Fourteen, the Georgia Constitution Art. I, Sec. I, Pars. I and XIII, and OCGA § 17-5-30.

The court denied the motion as to the premises and person but

suppressed the evidence found in the car. The basis regarding the premises was that Sanders lacked standing to challenge that search and seizure. On appeal Sanders challenges only the ruling with respect to the premises.

Sanders acknowledges that the residence, for which a search warrant had been issued, was that of two men other than himself. The evidence shows that he and another person came together to the residence on Sunday afternoon. An undercover agent was there along with the residents and a third person, for a prearranged meeting at which a supplier called "T" was to bring cocaine for the agent's purchase. When the officers who were waiting outside to execute the search warrant were spotted, Sanders was in the back bedroom with resident Brown to "cut out" some cocaine. Alerted, Sanders went to the bathroom, opened the window, and put the bag containing cocaine on the sill outside the window but inside the screen. An agent caught sight of Sanders as he was closing the window, found the cocaine on the sill, and arrested him.

That seizure violated his rights, Sanders contends, and he has standing to complain because an essential element of the crime is possession.

Appellant recognizes that this factor does not give standing to complain of a violation of Fourth Amendment rights. The Supreme Court discarded the rule giving automatic standing to persons accused of possessory crimes in *United States v. Salvucci*, 448 U. S. 83 (100 SC 2547, 65 LE2d 619) (1980). It held, at 91-92, that "an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.' (Cit.)"

We recognized this in *Graham v. State*, 171 Ga. App. 242, 246 (3) (319 SE2d 484) (1984), and went on to hold that since defendants had no expectation of privacy in the swamp, they had no standing to voice a Fourth Amendment objection to its search. This "expectation of privacy" finding was based on *Staton v. State*, 164 Ga. App. 464 (1) (297 SE2d 375) (1982), which involved the search of a third person's premises (defendant's mother's apartment), as here. Sanders has shown no fact upon which to base an expectation of privacy in the premises or in the window sill, and thus, as far as the Fourth Amendment is concerned, he is foreclosed from complaining. *Rakas v. Illinois*, 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387) (1978); *Rawlings v. Kentucky*, 448 U. S. 98 (100 SC 2556, 65 LE2d 633) (1980).

Sanders makes no argument based on the other provisions of the United States Constitution raised below, or on the Georgia Constitution, so we will not consider those grounds. Court of Appeals Rule 15 (c) (2); *Bodie v. State*, 173 Ga. App. 442, 443 (2) (327 SE2d 232) (1985); see also *Hawkins v. State*, 175 Ga. App. 606 (n. 1) (333 SE2d 870) (1985).

It is OCGA § 17-5-30 that gives appellant hope. He offers that the statute gives him standing to challenge a search of another's residence because he is charged with a possessory offense and is thus a person "aggrieved" by the search which yielded the evidence. He relies on *Reece v. State*, 152 Ga. App. 760 (264 SE2d 258) (1979).

Of course, a state statute may give broader rights than does the United States Constitution.[1] The United States Supreme Court has often stated this principle which derives from the natures of both federalism and constitutional law. For example, and specifically with respect to the Fourth Amendment, that Court has said: "Of course, Congress or state legislatures may extend the exclusionary rule and provide that illegally seized evidence is inadmissible against anyone for any purpose." *Alderman v. United States*, 394 U. S. 165, 175 (89 SC 961, 22 LE2d 176) (1968).

The trouble with Sanders' reliance on *Reece* is that it applies federal constitutional law, not OCGA § 17-5-30. So it does not construe the statute. As shown, the federal constitutional law has abrogated automatic standing for persons charged with crimes of possession. We find no case construing the state statute as giving such standing. Nor does one appear giving standing based on appellant's other argument, that he was a covered "defendant aggrieved by an unlawful search and seizure," in the words of the statute, because the objective of the search warrant was the interception of the cocaine delivery by him, so the fact he was a non-resident of the premises to be searched was irrelevant to his status as a person aggrieved and thus clothed with a right to complain. For defendant movant to be "aggrieved" by the search on the premises under our state statute, the alleged violation must have occurred on movant's premises or movant's Fourth Amendment rights must have been infringed in some other manner. *Van Nice v. State*, 180 Ga. App. 112, 114 (1) (348 SE2d 515) (1986); *Romano v. State*, 162 Ga. App. 816, 819 (1) (292 SE2d 533) (1982). We decline to accept the proposition that defendant achieved the status of one "aggrieved" under OCGA § 17-5-30, merely because the objective of the search warrant was the interception of the cocaine delivery, since it is the recognized relationship of the person with the property searched that gives rise to the protective device of suppression. See *State v. Scott*, 176 Ga. App. 887, 888 (1) (339 SE2d 276) (1985).

We find no error in the trial court's ruling.

2. The second error alleged is the court's refusal to grant a mistrial after the state began to introduce evidence of similar transaction

---

[1] So may a state constitution. See *Oregon v. Hass*, 420 U. S. 714, 719 (95 SC 1215, 43 LE2d 570) (1975). See also Justice Smith's dissenting opinion in *State v. Luck*, 252 Ga. 347, 350 (312 SE2d 791) (1984).

without the prior notice required by Uniform Superior Court Rule 31.3. He argues that, where there is "deliberate or reckless disregard" of this rule by the state, curative instructions are an insufficient remedy and a mistrial is required as a matter of law.

Defendant first complains about the following dialogue which occurred on direct examination of the undercover agent when the agent was testifying about the first time he heard talk about Sanders: "[Agent]: . . . The first time I heard the name [T Sanders] was before Christmas and — [State]: In connection with what please, sir? [Agent]: Snow storm for Christmas. We were going to have snow for Christmas. [State]: What does that mean? [Agent]: Snow is a street name for cocaine and they would talk about having a white Christmas or having a snow storm for Christmas which is indicative of saying, we're going to have cocaine over the Christmas holidays or New Year's holidays. That's street slang for saying — [State]: You said they. Who is they?" Before any answer was given, defendant objected, the state voluntarily discontinued the line of questioning, and the court instructed the jury: "We'll strike the last answer and ask the next question. Let's just stay with the basic facts in this case and I think that'll take care of it."

The defendant lodged no further objection. "[A] litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an [alleged] erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it. [Cit.]" *Upshaw v. Cooper*, 127 Ga. App. 690, 692 (1) (194 SE2d 618) (1972).

The second incident occurred during the state's direct examination of the owner of the searched residence. [State]: "Is this the first time or was that day on January 6th the first time that this defendant had ever [brought] cocaine into your house? [Witness]: No, sir." Defendant then objected on the basis that there had been no disclosure under Uniform Superior Court Rule 31.1 and the court sustained the objection. Defendant reserved the right to later make a motion for mistrial based on the state's violation of the rule. It was made and denied with the court sua sponte offering to give cautionary instructions.

The court told the jury: "Now, first of all, it was improper to ask that question. It should not have been asked. There was no answer given, as I recall, but whether there was or was not, let me say to you that there is no evidence in this case and there will be no evidence submitted to you there have been any previous dealings between Mr. Brown and Mr. Sanders. So you will completely disabuse your minds of not only that question but any possible answer that you thought

might have come as a result of that particular question. It was improper. There is no evidence for you to consider in that regard." Defendant was dissatisfied and preserved his right to challenge the denial.

" 'The grant or denial of a mistrial is within the discretion of the trial judge and will not be grounds for reversal on appeal unless a mistrial is mandated to ensure a fair trial. [Cit.]' [Cits.]" *Dye v. State*, 177 Ga. App. 824, 825 (341 SE2d 314) (1986).

"The trial court fully instructed the jury to disregard both the complained-of question . . . and [response]. The extent of a rebuke and curative instruction is within the discretion of the trial court. [Cit.] In view of the immediate and thorough corrective action of the court in the instant case, we cannot say that the court's refusal to grant a mistrial constituted an abuse of discretion. [Cits.]" *Smith v. State*, 154 Ga. App. 258, 259 (4) (267 SE2d 863) (1980).

The state's violation of the Uniform Superior Court Rule does not remove the trial court's exercise of discretion in ruling on the request for mistrial by *requiring* that a mistrial be granted. Here, a mistrial was not mandated. See *Robinson v. Robinson*, 256 Ga. 181 (345 SE2d 349) (1986), which discusses in the civil context that a violation of the Uniform Superior Court Rules should be assessed under the circumstances of the case.

3. Lastly, appellant claims that the trial court in response to the state's objection, improperly restricted his cross-examination of a state's witness with respect to his incident report having omitted any reference to defendant's statement regarding the cocaine. Defendant explained that he was trying to impeach the agent by the apparent omission in the agent's report, i.e., that the agent was "saying that something happened that was important to his investigation and it doesn't appear in his report. . . . Common sense and logic would tell us if it's that important it would be in his report."

The court ruled that it was not proper to impeach the witness by showing the omission in the police report.

"Although the [defendant] is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court. OCGA § 24-9-64; [Cits.]" *White v. State*, 253 Ga. 106, 110 (4) (317 SE2d 196) (1984). This discretion "will not be disturbed on appeal unless manifestly abused. [Cits.]" *Fitzgerald v. State*, 166 Ga. App. 307, 310 (7) (304 SE2d 114) (1983). Was there a manifest abuse of discretion here?

Even if we assume that showing the omission in the report was a proper method of impeaching the agent in that it would be a form of contradiction or inconsistency to have omitted something of import from the report, see OCGA § 24-9-83, there was no harm to defendant by the court's refusal to permit further testimony regarding the omis-

sion as a means of impeaching the agent. The point of the omission was well-driven home to the jury prior to any objection or ruling of the court; the court did not instruct the jury to disregard the objected-to line of questioning and the responses to it nor the dialogue which took place about the eliciting of the testimony for the purpose of impeachment.

Under these circumstances, where defendant was able to establish the subject omission before the jury prior to any objection or ruling, and where we are unable to discern any harm to defendant by the court's restriction of the cross-examination regarding the omission, we find no manifest abuse of the court's discretion.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 21, 1986 —
REHEARING DENIED DECEMBER 3, 1986 — 

· *J. Robert Daniel*, for appellant.
*Willis B. Sparks III, District Attorney, Vernon R. Beinke, Thomas J. Matthews, Assistant District Attorneys*, for appellee.