A91A0847. THE STATE v. JACKSON et al.

(412 SE2d 593)

McMURRAY, Presiding Judge.

Defendants Clint Jackson and Tanya Faye Kendrick were jointly indicted for violating Georgia's Controlled Substances Act, possessing more than one ounce of marijuana. Defendants pleaded not guilty and filed separate motions to suppress.

At the beginning of a hearing on the motions to suppress, the State argued that defendant Kendrick's motion to suppress should be dismissed for lack of standing because the search was conducted in defendant Jackson's automobile. The trial court reserved ruling on the motion to dismiss and heard from the State's sole witness, Deputy Brian Crisp of the Clayton County Sheriff's Department.

Deputy Crisp testified that he and another plainclothes law enforcement officer were on stake-out at a suspected drug source house at about 9:00 in the evening on January 31, 1990, when he observed two persons drive from the targeted house in a 1976 Oldsmobile Cutlass.[1] Deputy Crisp testified that it was dark and that he could not

---

[1] Deputy Crisp testified that the stake-out was based on neighborhood complaints re-

identify the suspects because of the distance of surveillance, but that he discovered from a check of the license plate that the Cutlass was registered to defendant Jackson. Deputy Crisp testified that he followed the Oldsmobile in an unmarked patrol car and that his partner alerted a marked patrol car for assistance in the event the Cutlass was observed violating traffic laws.

Deputy Crisp testified that the suspects did not violate traffic laws, but that they drove to a house where Deputy Crisp had arrested Kendrick within the past year for selling marijuana. (Deputy Crisp remembered that Jackson was with Kendrick when he arrested her for selling marijuana.) The deputy testified that his partner radioed for a marked patrol car before the suspects arrived at Kendrick's house, explaining that "[w]hen it became time to interview Mr. Jackson, [he] wanted some other presence there so that [Jackson] would be aware of the fact that there was police officers."

Deputy Crisp testified that the Oldsmobile parked in the grass to the right of defendant Kendrick's "single wide driveway . . ." and that he "pulled [the unmarked patrol car] up into the first part of the driveway behind [Jackson's] vehicle just to the side, the left side, with the headlights on." Deputy Crisp explained that "Mr. Jackson and Ms. Kendrick both had already exited their vehicle and [Ms.] Kendrick was walking back to [Deputy Crisp] as [he] was approaching [her]." Deputy Crisp testified that he identified himself as "a police officer[; that he] told him that [he] had been conducting a narcotics investigation and had been conducting surveillance on [a suspected drug source] residence, that [he] had observed him leave the residence and followed him to [defendant Kendrick's house]." Deputy Crisp testified that he then "asked [Jackson] if he would allow him to search his person and his vehicle, and . . . advised [Jackson] that he did not have to let [Deputy Crisp], if he would, that would be fine." Deputy Crisp testified that defendant Jackson consented to a search of his vehicle and that "under the passenger side of the bench seat [he] found a large plastic bag containing . . . six smaller clear plastic bags of marijuana."

Deputy Crisp testified that the marked patrol car arrived at the scene sometime after his encounter with defendants; that he and his partner were clothed in blue jeans on the night of the search; that no weapons were in view during the encounter with defendants and that neither officer "pull[ed]" their weapons during the encounter.

garding suspicious activities at the targeted house and on information from Kendrick that illegal drugs could be pruchased at the targeted house. Deputy Crisp also indicated that he was familiar with Kendrick because he had "been to [her] residence previously to effect an arrest warrant on Ms. Kendrick for the sale of marijuana to [another law enforcement officer]."

The trial court subsequently entered an order and concluded that defendant Kendrick had standing to challenge the search of Jackson's vehicle because the search was conducted on Kendrick's property. The trial court also granted the motions to suppress, holding that defendants were unlawfully detained under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889), and that the unlawful detention tainted Jackson's consent to search, i.e., the consent to search was not freely and voluntarily given. This appeal followed. *Held*:

1. The State first contends the trial court erred in holding that defendant Kendrick had standing to challenge the search of Jackson's vehicle because Jackson drove his car onto Kendrick's property.

"[P]roperty rights are neither the beginning nor the end of the fourth amendment inquiry. *United States v. Salvucci*, 448 U. S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980). Other factors enter into the calculus, no single integrant being determinative. The additional circumstances to be considered include whether the appellants enjoyed the right to exclude others from the property, or whether they had a possessory interest in the articles seized, and what precautions were taken to assure their privacy. See *United States v. Haydel*, 649 F.2d 1152, 1154-55 (5th Cir. 1981), *modified*, 664 F.2d 84, *cert. denied*, 455 U. S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982)." *United States v. Torres*, 705 F2d 1287, 1294 (11th Cir. 1983).[2]

In the case sub judice, there is no evidence that Kendrick exercised precautions to insure the privacy or safety of Jackson's automobile, i.e., Kendrick did not request the law enforcement officers to leave her front yard; that Kendrick had a possessory interest in the searched vehicle or that she expected privacy in the passenger compartment of Jackson's automobile. *Autry v. State*, 150 Ga. App. 584, 585 (1) (258 SE2d 268). On the contrary, any expectation of privacy Kendrick may have had in the passenger compartment of Jackson's vehicle vanished when she voluntarily exited the vehicle and approached the law enforcement officers. These circumstances show that Kendrick, "who asserted neither a property nor a possessory interest in the automobile searched nor an interest in the property seized and who failed to show that [she] had any legitimate expectation of privacy in the . . . area under the seat of the car in which [she was]

---

[2] "The first important attempt to redefine the Fourth Amendment away from the principles of property law occurred in Justice Brandeis' dissenting opinion in *Olmstead v. United States*[, 277 U. S. 438 (48 SC 564, 72 SE 944),] in 1928. He contended that 'every unjustifiable intrusion by the Government upon the private life of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment.' Therefore, Justice Brandeis defined the interest protected by the Fourth Amendment in terms of the 'right to privacy' of the individual, and not strictly in terms of property interest. These views were . . . adopted by the United States Supreme Court in 1967 in *Katz v. United States*[, 389 U. S. 347 (88 SC 507, 19 LE2d 576)]." Green, Ga. Law of Evidence, p. 13, § 8 (3d ed.).

merely [a passenger, is] not entitled to challenge a search of [that area]. [Cits.]" *Rakas v. Illinois*, 439 U. S. 128, 129 (4) (99 SC 421, 58 LE2d 387). See *Graham v. State*, 171 Ga. App. 242, 245 (3), 246 (319 SE2d 484). Further, any holding which implies that Kendrick is a "defendant aggrieved by an unlawful search and seizure" under OCGA § 17-5-30 because Jackson drove his automobile into Kendrick's front yard is erroneous.

"[I]t is the recognized relationship of the person with the property searched that gives rise to the protective device of suppression [under OCGA § 17-5-30]. See *State v. Scott*, 176 Ga. App. 887, 888 (1) (339 SE2d 276) (1985)." *Sanders v. State*, 181 Ga. App. 117 (1), 119 (351 SE2d 666). In the case sub judice, there is no evidence that Kendrick had a possessory interest or an expectation of privacy in Jackson's vehicle and there is no evidence that the searching law enforcement officers were unlawfully in Kendrick's yard. Consequently, there remains no basis under OCGA § 17-5-30 to support a claim that Kendrick had standing to challenge the search of Jackson's vehicle. See *Britt v. State*, 186 Ga. App. 418, 419 (3), 420 (367 SE2d 298). The trial court erred in failing to dismiss defendant Kendrick's motion to suppress for lack of standing.

2. Next, the State contends the trial court erred in holding that defendants were unlawfully detained without reasonable suspicion under *Terry v. Ohio*, supra, and that the unlawful detention tainted defendant Jackson's consent to search.[3]

" ' "Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief 'seizures' that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. (Cits.)" ' *McAdoo v. State*, 164 Ga. App. 23, 26 (295 SE2d 114)." *Alexander v. State*, 166

---

[3] The trial court did not question the credibility of the sole witness at the motion to suppress hearing, but relied on Deputy Crisp's undisputed testimony to support its findings of fact and conclusion that defendant Jackson's consent was not free and voluntary. Consequently, we review the trial court's application of the law to the facts de novo, " ' "examin[ing] the entire record and mak[ing] an independent determination of the ultimate issue of voluntariness." ' *Beckwith v. United States*, 425 U. S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976) (quoting *Davis v. North Carolina*, 384 U. S. 737, 741-742, 86 S. Ct. 1761, 1764, 16 L.Ed.2d 895 (1966))." *United States v. Garcia*, 890 F2d 355, 358 (11th Cir.). See *State v. Davis*, 261 Ga. 225, 226, fn.1 (404 SE2d 100), where the Supreme Court recognizes that the standard of appellate review may be different in circumstances where the trial court's findings of voluntariness result from an application of the law to undisputed facts. See special concurrence in *State v. McBride*, 261 Ga. 60, 65 (401 SE2d 484), where Justice Hunt points out that decisions of voluntariness involve mixed questions of law and fact and suggests that appellate courts strive to segregate factual components from legal conclusions in such cases and apply appropriate standards of appellate review so as to eliminate confusion.

Ga. App. 233 (2), 234 (303 SE2d 773). In the case sub judice, defendants were not unlawfully detained under *Terry v. Ohio*, supra; they were subjects of a permissible police and citizen encounter involving no coercion or detention.

"'[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (Cits.) In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. . . .' *United States v. Mendenhall*, [446 U. S. 544 (100 SC 1870, 64 LE2d 497, 509) (1980)]." *McShan v. State*, 155 Ga. App. 518 (1) (271 SE2d 659).

In the case sub judice, Deputy Crisp and his partner were in an unmarked patrol car when they pulled into Kendrick's driveway; they were the only officers on the scene during the initial encounter with defendants; the officers were in plain clothing on the night of the search and the officers' weapons were not drawn or in view during the encounter. The headlights of the unmarked patrol car fully illuminated the area of the encounter; defendants freely approached the officers after Deputy Crisp exited his patrol car; Deputy Crisp identified himself when he met defendants and the deputy explained why the officers were on the scene. Deputy Crisp then asked permission to search defendants' bodies and Jackson's vehicle, informing defendant Jackson that he was not required to consent to a search. At that point, neither Kendrick nor Jackson attempted to terminate the conversation with Deputy Crisp and they did not attempt to walk away from the deputy. Instead, defendants responded affirmatively to the requests to search. This evidence and the absence of evidence showing some physical touching of the person of the defendants, or the use of language or the tone of voice indicating that compliance with Deputy Crisp's request might be compelled reveals, as a matter of law, that defendants were not "seized" (detained) within the meaning of the Fourth Amendment. However, this does not conclude our inquiry.

The "free to leave" analysis under *Terry v. Ohio*, supra, is not the sole basis for determining whether a defendant's consent to search was freely and voluntarily given. "The more appropriate inquiry is whether a reasonable [person] would feel free to decline the officers' request [to search] or otherwise terminate the encounter." *Florida v. Bostick*, ___ U. S. ___ (111 SC 2382, 115 LE2d 389) (1991).

More specifically, "[t]he courts determine the voluntariness of . . . consent by examining the 'totality of the circumstances,' including the age of the accused, his education and intelligence, the length of detention, whether he was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of these factors. *Schneckloth v. Bustamonte*, 412 U. S. 218, 229 (93 SC 2041, 36 LE2d 854) (1973); id. at 80." *State v. McBride*, 261 Ga. 60, 61 (1), 62 (401 SE2d 484).

In the case sub judice, there is no evidence of defendant Jackson's age, the extent of his education or the degree of his intelligence. However, it is apparent that Jackson is an adult; that he owned and safely operated an automobile on the night of the encounter and that he was clear and responsive to Deputy Crisp's requests to search. Further, there is no indication that defendants were detained by the law enforcement officers; that the encounter was drawn out or prolonged; that defendants were addressed in a harsh or threatening manner or that defendants were subjected to physical duress or threat of physical injury. "The only evidence in the record affirmatively shows that [Jackson] voluntarily agreed to allow the officer to [search his car]." *State v. McBride*, 261 Ga. 60, 61 (1), 62, supra. Consequently, the trial court erred in concluding that defendant Jackson's consent to search was not freely and voluntarily given. It was error to grant defendant Jackson's motion to suppress.

*Judgment reversed. Carley, P. J., Pope, Beasley and Cooper, JJ., and Judge Arnold Shulman concur. Sognier, C. J., Birdsong, P. J., and Andrews, J., dissent.*

ANDREWS, Judge, dissenting.

Because I agree with the trial court that there was no articulable suspicion sufficient to trigger an inquiry under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), much less probable cause, the initial entry onto the property of Kendrick was unconstitutional and the evidence seized should be suppressed.

On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

1. The State first contends that, since the automobile was searched pursuant to owner Jackson's consent, Kendrick had no standing to object to it. This argument, however, overlooks the fact that the car was located on and the officers entered Kendrick's property to make the initial contact.

Kendrick has standing to challenge the initial entry onto her property and the ensuing search of the automobile parked on her

premises. See *Britt v. State*, 186 Ga. App. 418, 420 (3) (367 SE2d 298) (1988); *Todd v. State*, 184 Ga. App. 750, 751 (2) (362 SE2d 400) (1987); *Sanders v. State*, 181 Ga. App. 117, 119 (1) (351 SE2d 666) (1986). As acknowledged by the majority, ownership is not the key to determining standing, but whether the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place. *Minnesota v. Olson*, 495 U. S. 91 (110 SC 1684, 109 LE2d 85) (1990). Certainly a homeowner has the right to expect that the curtilage of her property will not be breached by the police save with a warrant or upon probable cause.

Therefore, I conclude that there was no error in the trial court's denial of the oral motion to dismiss Kendrick's motion to suppress.

2. The majority further concludes that no "seizure" of either defendant occurred which triggered the protection of the federal Fourth Amendment.[4]

The trial court found that at the time Officer Crisp began questioning Kendrick and Jackson, they were no longer free to go and the resulting consent was therefore tainted.

A *Terry* stop must be premised upon a reasonable and founded suspicion. " '(W)hat is a "reasonable articulable ground" for the detention may be less than probable cause to make an arrest or conduct a search, but must be more than mere caprice or arbitrary harassment. (Cit.)' *Allen v. State*, 140 Ga. App. 828 (1) (232 SE2d 250) (1976)" *West v. State*, 194 Ga. App. 620, 621 (391 SE2d 673) (1990).

Here, the officers saw a car belonging to someone with whom they had no previous contact carrying two otherwise unidentified people leaving the home of one suspected of but never charged with selling drugs. The suspected person was not seen at the house while the unidentified persons were present, only a truck owned by him. No contact between the truck and car occupants was observed.

The officers then followed these unidentified persons to the address of Kendrick, although they did not know Kendrick was in the car when they pulled up the driveway and blocked in the car. When the occupants got out of the car, they were placed in the police car's headlights and questioned. A marked police car was also present.

There was no anonymous tip, details of which were corroborated by the officers' observation, as in *Alabama v. White*, ___ U. S. ___ (110 SC 2412, 110 LE2d 301) (1990). There was no identity of the car's occupants at the time the initial approach to them was made, by encroaching on the property of Kendrick to block Jackson's car.

---

[4] No argument is made regarding the additional state constitutional argument made by Kendrick, nor did the trial court's order rely upon any authority except that dealing with the federal Fourth Amendment. Therefore, we reach no conclusions as to any additional protection afforded by the state provision. *Sanders*, supra at 119, fn. 1.

When they got out of the car, they were told what to do and they complied, submitting to the assertion of authority by the officers, including the presence of the marked car, and they were "seized" at that point. *California v. Hodari D.*, ___ U. S. ___ (111 SC 1547, 113 LE2d 690, 697) (1991); *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990); *Jackson v. State*, 191 Ga. App. 439, 441 (2) (382 SE2d 177) (1989). Therefore, I would affirm the trial court's conclusion that Jackson's consent to search was not voluntary. *Radowick v. State*, 145 Ga. App. 231, 238 (3) (244 SE2d 346) (1978) (physical precedent); see generally *Florida v. Bostick*, ___ U. S. ___ (111 SC 2382, 115 LE2d 389) (1991).

I am authorized to state that Chief Judge Sognier joins in this dissent.

DECIDED NOVEMBER 15, 1991.

*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellant.
*Warren A. Sellers, Horace W. Roberts*, for appellees.