A98A0523. BRANNON et al. v. THE STATE.
(500 SE2d 597)

ELDRIDGE, Judge.

The Cook County Superior Court denied appellants John and Patricia Brannon's motion to suppress. The trial court certified the issue for interlocutory appeal. We granted appellants' application in order to review the parameters of a residential search incident to a lawful arrest under the facts of this case. Because those parameters were exceeded, we reverse.

Michael Pitts, Special Agent with the South Georgia Drug Task Force, was asked to aid Cook County law enforcement in arresting appellant John Brannon pursuant to a bench warrant issued by Douglas County. The out-of-county bench warrant was issued after John Brannon was indicted by a Douglas County grand jury for "Violation Racketeering Influenced & Corrupt Organizations Act"; the specific act which gave rise to the indictment and subsequent bench warrant was not named in the warrant.

Agent Pitts assisted other officers in executing the Douglas County warrant at John Brannon's Cook County home at approximately 9:00 p.m. on June 13, 1997. Appellants' daughter answered the door and "reluctantly" let the officers into the kitchen of the residence. Appellant Patricia Brannon was also in the kitchen. John Brannon, in an "agitated" state, entered the kitchen from "the bedroom area." Two officers executed the warrant and arrested John Brannon in the kitchen. He was taken out to a patrol car and secured therein.

As John Brannon was being secured in the patrol car, Agent Pitts and other officers executed a "search incident to arrest," which entailed a search of "[t]he closets, any place that someone else might

hide or Mr. Brannon might have been able to destroy any evidence or attempt to conceal any evidence incident to arrest."

The police entered appellants' bedroom, where a quantity of marijuana was allegedly seen in plain view on the floor around the commode in an adjoining bathroom. The police searched appellants' bedroom closets and dresser drawers. Weapons were seized from the closets and the dresser drawers. In addition, a cookie tin was found in a top dresser drawer; the officers opened the cookie tin and seized two and one-half ounces of marijuana contained therein.

Thereafter, Special Agent Pitts asked John and Patricia Brannon for permission to search the remainder of the house, which permission was denied. Agent Pitts then telephoned a magistrate and obtained a telephonic warrant to search appellants' residence. Nothing further was found.

Patricia and John Brannon were charged in a two-count, Cook County felony indictment. The indictment charged appellants with possession of marijuana with intent to distribute under Count 1, based upon the marijuana found in the cookie tin; in addition, appellants were indicted for possession of firearms during the commission of a felony (i.e., Count 1) under Count 2. Pursuant to appellants' motion to suppress, a hearing was held in which Special Agent Pitts testified that all items had been seized during a "search incident to arrest" and that the only areas that had been so searched were areas in John Brannon's "immediate presence and control" and "within his reach." The officer (and prosecutor) understood "immediate presence and control" and "within his reach" to refer to those areas in which appellant John Brannon had been just prior to his arrest in the kitchen of his residence. When asked by the defense why he had not obtained a search warrant after appellant was secured in the patrol car, Agent Pitts replied that "[t]he search incident to arrest precluded the necessity for a search warrant." The trial court denied the motion to suppress. *Held*:

"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence." OCGA § 17-5-1 (a). Thereafter, OCGA § 17-5-1 (a) (1)-(4) list four *purposes* for such search. These enumerated purposes do not expand the spatial limitations of a search incident to arrest as previously established in OCGA § 17-5-1 (a), i.e., the "person arrested" and that person's "immediate presence." Specifically, the enumerated purpose of "[d]iscovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested" pursuant to OCGA § 17-5-1 (a) (4) does not give carte blanche to an arresting officer; while such may be a proper *purpose* for the search, the search is still limited to the "person arrested" and

that person's "immediate presence."

With regard to the instant search incident to arrest, "[o]nce lawfully within the house, the officers were authorized to make a search of the entire house for the limited purpose of securing it, i.e., discovering the presence of all occupants and [thereby] eliminating the possibility of harm to the officers and the destruction of evidence. Once the defendant [was] under arrest [and Patricia Brannon and the daughter detained in the kitchen], the only remaining valid ground for a search of the [bedroom] was for the purpose of discovering the presence of any possible remaining occupants. The search revealed none. A search of the [bedroom] was not justified as incident to the arrest of [John Brannon]. [John Brannon] was arrested [in the kitchen]; no contraband was found there within the area of his immediate presence. . . . However, [a] police officer is free to use and seize what he sees *in plain sight* if he is at a place where he is entitled to be. The officers in the case sub judice, being entitled to go throughout the house for the limited purpose of securing it, were therefore free to use and seize the marijuana in plain sight [at the bathroom commode]. They were not authorized to open up closed containers or otherwise discover contraband which was not in plain view. . . . The 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Citations and punctuation omitted; emphasis in original.) *Lentile v. State*, 136 Ga. App. 611, 613-614 (222 SE2d 86) (1975); see also *State v. Scott*, 176 Ga. App. 887, 889 (3) (339 SE2d 276) (1985).

Contrary to the position of the state, this case is not controlled by our decision in *State v. Camp*, 175 Ga. App. 591 (333 SE2d 896) (1985). In *Camp*, an undercover police officer purchased marijuana; the sale occurred from the bedroom of the defendants' mobile home. Immediately following the purchase, the defendants were arrested in the bedroom. A subsequent search incident to arrest was made under exigent circumstances wherein police officers knew contraband was present in the bedroom because of the previous sale in which they had participated. Further, although the defendants were secured in another area of the mobile home during the search, the actual search was conducted only in the bedroom area where the defendants were arrested, and the contraband seized by the officers was found in the bedroom within the immediate arms-length reach of the defendants at the time of their arrest. Id. at 594-595.

By comparison, the arresting officers in this case were executing an out-of-county bench warrant; no crime was committed in their presence, and no "exigent" circumstances existed. There was no reason to believe, based upon the Douglas County bench warrant, that any contraband would be present in the appellants' Cook County

home or that the "fruits" of the Douglas County crime for which John Brannon was arrested would be located in his Cook County residence.[1] Perhaps most contrastingly, the search conducted in the case sub judice, which included closets, dresser drawers, and a cookie tin, far exceeded the search of the immediate area of arrest, which was the limited scope of the search conducted in *Camp*.[2] Thus, our decision in *Camp* does not at all support the scope of the search conducted herein.

The state argues that the search of the appellants' bedroom was proper because John Brannon had just exited the bedroom immediately prior to his arrest and it was thus an area under his "immediate control." However, this argument mixes the concept of "immediate control" with the concept of "immediate presence" in a search incident to arrest. The issue of "immediate control" arises in relation to the exigent circumstances that surround a traffic stop arrest and the proper scope of a search of the vehicle from which the arrested person was just removed. *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981); *Chimel v. California*, 395 U. S. 752, 762-763 (89 SC 2034, 23 LE2d 685) (1969); *State v. Hopkins*, 163 Ga. App. 141 (293 SE2d 529) (1982); compare *Satterfield v. State*, 256 Ga. 593, 597 (4) (351 SE2d 625) (1987); see also *Camp*, supra at 597 (Pope, J., dissenting). The mobility of a vehicle, its status as the sole confined space from which an arrestee has just been removed, and the immediacy of the unexpected arrest provide exigent circumstances peculiar to traffic arrests. *Fortson v. State*, 262 Ga. 3, 4 (2) (412 SE2d 833) (1992). Clearly, such exigencies do not exist with regard to an arrest at a residence during the execution of an out-of-county bench warrant.

The state's position also mingles together protective search concepts involved in a traffic *Terry* stop[3] setting and "search incident to arrest." A search conducted incident to arrest is not a "*Terry* stop." It serves a different function. During a traffic *Terry* stop, an officer may search an area within the suspect's "immediate vicinity" in order to ensure his safety; this area may include a limited search of an automobile that is away from the suspect's immediate presence and control. However, this type of *Terry* stop search is premised on the possi-

---

[1] The state's contentions that Brannon "was supposed to be a violent offender with a large number of weapons" and that "there was also supposed to be suspected drug activity in the house" are not connected to the Douglas County offense for which he was arrested and, in any event, provide no basis upon which to expand a search incident to arrest.

[2] Our decision in *Camp* specifically noted that during the search incident to arrest, there had been no search beyond the *immediate* area of the three defendants' arrests and no "upsetting of personal belongings or emptying of drawers or destruction of order." Id. at 597.

[3] A police officer is authorized to make a brief, investigatory detention of an individual where the intrusion can be justified by specific, articulable facts giving rise to a reasonable suspicion of criminal conduct. *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).

bility that, after the brief investigation that justifies a *Terry* stop, the suspect may be let go. "[I]f the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." (Punctuation omitted.) *Michigan v. Long*, 463 U. S. 1032, 1045-1052 (103 SC 3469, 77 LE2d 1201) (1983); see also *Hinson v. State*, 229 Ga. App. 840 (494 SE2d 693) (1997). Certainly, such circumstances do not provide a basis for an extended protective "search incident to arrest" of a residence, wherein the arrested person will not be released.

In sum, for any or all of the reasons enumerated in OCGA § 17-5-1 (a) (1)-(4), a search incident to arrest may be conducted of the "person arrested" and the area within the arrested person's *"immediate* presence." Under the facts of this case, "immediate presence" does not mean that a search of appellants' bedroom closets[4] and dresser drawers is justified as a "search incident to arrest" when the arrest occurred in the kitchen. *Lentile,* supra. "To permit the search here would be to invite unwarranted license." *Scott,* supra at 890.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 25, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998

*Howard E. Yancey, Jr.,* for appellants.
*Robert B. Ellis, Jr., District Attorney, Timothy L. Eidson, Assistant District Attorney,* for appellee.

---

[4] Other than would be necessary as part of a protective sweep of a residence for additional persons so as to ensure an officer's safety.