## A00A1754. POWELL v. THE STATE.
(538 SE2d 857)

SMITH, Presiding Judge.

We granted the application of Eric Demetrius Powell for interlocutory review after denial of his motion to suppress. In this appeal, we are called upon to consider the scope of the search allowed by OCGA § 17-5-1 (a), authorizing a search incident to arrest. After review of the relevant law and the facts established at the hearing on Powell's motion to suppress, we conclude that the arresting officers' search of the bedroom in which Powell was arrested was reasonable under the circumstances presented here. We therefore affirm the trial court's denial of the motion to suppress.

As a result of testimony that Powell and another man, Sims, had made terroristic threats while attempting to obtain firearms from a

---

[3] *Walton v. State*, 242 Ga. App. 639, 641 (2) (530 SE2d 531) (2000).
[4] Id.
[5] See generally OCGA § 24-4-6.

third man, an officer of the Moultrie Police Department obtained arrest warrants for both Powell and Sims. The officers entered premises where Powell and Sims were sharing a bedroom. When the police entered the bedroom, they found Powell, Sims, and an unidentified woman occupying the room. While Powell and Sims were cooperative and did not offer any resistance, other occupants of the house became "pretty irate, yelling and screaming."

Powell and Sims were arrested, and the officers testified that they searched the room "for our safety," "to be sure that there were no weapons or any other people, someone hiding or anything like that." The other officer agreed that "there was a closet in the room that anybody could have been hiding in. And for our safety the room was searched." According to one officer, he was in the process of searching the room as Powell and Sims were taken downstairs. The officers looked under the bed, through the dressers, and in a closet. They searched only the room where the men were arrested and did not search any other portion of the house. They did not find any other persons hidden in the room, but one of the officers discovered a rifle on a shelf in the bedroom closet. He could not recall whether the closet door was open or closed, but stated, "I believe it was closed but I'm not sure." The rifle proved to be stolen, and this prosecution for theft by receiving stolen property followed.

A police officer may search both a person arrested and the area within that person's "immediate presence" for the purpose of protecting the officer from attack, preventing the person's escape, or discovering fruits of the crime for which the person is arrested or items which might have been used in that crime. OCGA § 17-5-1.

Powell contends the officers' search exceeded the scope of a search incident to arrest under OCGA § 17-5-1. He argues that the police had no authority to search the room once he and Sims were arrested and removed and that no "protective sweep" was authorized because the police had no reason to believe that anyone else was hiding in the room. We disagree.

Powell relies on our recent decision in *Brannon v. State*, 231 Ga. App. 847 (500 SE2d 597) (1998), but the facts of this case distinguish it from *Brannon*. First of all, *Brannon* involved the purely administrative task of serving an out-of-county bench warrant on a charge unrelated to drugs that were found during the search incident to arrest. In contrast, the officers involved in Powell's arrest were investigating the underlying case, and one of them obtained the warrant. Moreover, the underlying crime involved threatening a person in an attempt to obtain firearms. Police concerns that Powell and Sims had succeeded in arming themselves by some other means therefore would have had some validity. These concerns would justify a search of their bedroom for weapons and any accomplices or other persons

who might pose a danger to the officers, particularly since at least one other person was found in the room at the time of their arrest and others, who were angry and screamed at the officers, were present in the house.

*Brannon* forbids a search of the closets and drawers in a bedroom only "when the arrest occurred in the kitchen. [Cit.]" Id. at 851. *Brannon* also excepts from its scope a search of closets or drawers "necessary as part of a protective sweep of a residence for additional persons so as to ensure an officer's safety." Id. at 851, n. 4.

The facts of this case more closely resemble those in *State v. Camp*, 175 Ga. App. 591 (333 SE2d 896) (1985), a decision distinguished by *Brannon,* supra at 849. We first note that *Camp* involved a warrantless arrest occurring after a drug sale to an undercover police officer. While in this case no crime was committed immediately before the arrest, the officers were proceeding under an arrest warrant and were equally authorized to "secure" the area by "discovering the presence of all occupants and eliminating the possibility of harm to the officers and the destruction of evidence." (Citations and punctuation omitted.) *Camp,* supra at 594 (2). This was true even though the defendants were removed from the site of the arrest before the search began. Id. at 592.

Also, in *Brannon,* supra, the police officers' ongoing investigation provided "no reason to believe" that items or persons directly related to the underlying investigation were concealed in the room. Id. at 849. The same is not true here. The officers testified to a concern for their safety, and the underlying investigation involved terroristic threats and firearms. We therefore cannot say as a matter of law that it was unreasonable for the officers to be concerned that items or persons involving these charges may have been concealed in the room and that they might pose a danger to the officers. This testimony would support not only a finding that the search was for the purpose of protecting the officers from attack under OCGA § 17-5-1 (a) (1), but also for the purpose of "[d]iscovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested." OCGA § 17-5-1 (a) (4). These factual findings were a matter for determination by the trial court, after weighing the credibility of the witnesses and their testimony.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since

the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Daniels v. State*, 222 Ga. App. 29, 31 (3) (473 SE2d 239) (1996).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2000.

*Allen & Forehand, Jon V. Forehand*, for appellant.

*J. David Miller, District Attorney, Andrew W. Pope, Assistant District Attorney*, for appellee.