A05A0630. ELLIOT v. THE STATE.
(616 SE2d 844)

SMITH, Presiding Judge.

Kendrick Elliot was convicted of the offense of criminal attempt to manufacture methamphetamine and sentenced as a recidivist. He

appeals, raising three enumerations of error. He raises the general grounds, contends the trial court erred in denying his motion to suppress, and asserts that the trial court abused its discretion in failing to consider a lesser sentence. The State concedes that sentencing Elliot as a recidivist may have been improper, and we agree. We find no merit in Elliot's other two contentions. We therefore affirm Elliot's conviction and remand this case to the trial court for resentencing.

1. We first consider whether the evidence presented at trial was sufficient to support Elliot's conviction for criminal attempt to manufacture methamphetamine.

Construed in favor of the jury's verdict, the evidence presented at trial showed that Elliot and his wife Susan both used methamphetamine, also called "meth" or "speed." A friend showed Elliot how to manufacture the drug, and the Elliots began making it regularly. Susan testified about the process used for making speed, the way they procured the ingredients for its manufacture, and how they avoided prosecution by using motel room bathrooms and friends' homes to perform the manufacturing process. She testified that they made it daily, and Elliot was much in demand for his work because he was known as a "good cook." Susan also testified that they used "a lot" of speed, injecting it intravenously.

When Elliot was high on speed he was "always angry" and became violent. After one such incident, Susan provided information to law enforcement authorities, who obtained a warrant for his arrest. Susan provided officers with possible locations for Elliot and descriptions of two vehicles he might be using. Elliot was discovered at a motel in Fort Oglethorpe and arrested. Officers found in Elliot's motel room materials that appeared to be either bomb components or laboratory items. Because officers were aware of the explosive nature of the materials used in manufacturing meth, they called in the Fort Oglethorpe Chief of Police and the fire department and evacuated the motel. A detective certified to investigate clandestine methamphetamine labs was called in, and he concluded that the materials were the components of such a lab.

The officers patted Elliot down and recovered a capped hypodermic needle from his pocket. The materials seized from the motel room were sent to the state crime laboratory, and a forensic chemist testified at trial that the items found in Elliot's motel room were those used in the manufacture of methamphetamine. This evidence was more than ample to support the jury's verdict finding Elliot guilty of attempted manufacture of methamphetamine under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Elliot contends the trial court erred in denying his motion to suppress the items seized from his motel room, arguing that the room was searched unlawfully after his arrest. We do not agree.

When reviewing a trial court's ruling on a motion to suppress, evidence is construed in favor of upholding the trial court's findings and ruling, which will not be disturbed if any evidence supports them. *State v. Williams*, 220 Ga. App. 100, 102 (2) (469 SE2d 261) (1996). So construing the evidence, the incident precipitating the charge for which Elliot was tried occurred when Elliot and Susan were staying with a friend in Tennessee, cooking methamphetamine. Elliot told Susan to extract more product from the residue in coffee filters previously used in the cooking process, and she refused because she "didn't feel like it." Elliot became "furious." He forced her into a van at gunpoint and drove to Chickamauga and Chattanooga National Military Park, still holding a handgun in his lap. On the ride, he struck her on her head with his gun. He told her that when they arrived at the park, he would shoot her, but before he did so, he would tie her to a tree and cut her with a knife, so that insects would "eat" her.

When they arrived and Elliot forced Susan out of the van, another van drove by and Elliot fired a shot toward Susan to force her into the woods. His mood then suddenly changed and he cried, apologized, and drove her back to their friends' home in Tennessee. While Elliot was on the telephone, Susan left the house and went to a supermarket in Fort Oglethorpe, where she telephoned her mother. Her mother called the police and took her to a hospital, where she was interviewed by law enforcement officers, including a U. S. Park Ranger. The ranger testified that Susan told him about the incident that occurred in the park, and that he called in other law enforcement officers.

When Elliot was found and arrested at a motel in Fort Ogle-thorpe, officers deployed around the motel room door and announced their presence, calling to Elliot to come out. After about five minutes, Elliot exited the room and slammed or pulled the door shut behind him. He was immediately arrested and handcuffed. Officers asked Elliot if anyone else was present in the room, but he did not answer, saying only that he wanted the officers to telephone his family so they could retrieve his personal belongings from the motel room.

Elliot relies upon *Brannon v. State*, 231 Ga. App. 847 (500 SE2d 597) (1998), to support his contention that the search of the motel room was unlawful because he shut the door behind him and the room was therefore not within his immediate presence after he was arrested. "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence." (Citation and punctuation omitted.) Id. at 848.

Georgia courts have held that even "probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing that the exigencies of the situation made that course imperative." (Citations and punctuation omitted.) *Carranza v. State*, 266 Ga. 263, 266 (467 SE2d 315) (1996). Occupied motel rooms are afforded the same considerations under the Fourth Amendment as private homes. *Pickens v. State*, 225 Ga. App. 792, 794 (1) (b) (484 SE2d 731) (1997).

We have held, however, that

> [p]olice officers are authorized to make a protective sweep in conjunction with an in-home arrest when they possess articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. [Cit.]

*Inglett v. State*, 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999). Such a search is limited to a sweep to ensure officer safety by detecting the presence of other occupants. Id. The facts in this case are different from those in *State v. Mixon*, 251 Ga. App. 168, 170 (554 SE2d 196) (2001). We found in *Mixon* that the trial court's grant of the motion to suppress was not clearly erroneous. The trial court in *Mixon* was authorized to conclude from the evidence that officers did not have a reasonable belief that the house contained any other individual posing a danger. Id. at 170-171.

Here, even though the issue at the hearing on the motion to suppress was the same, the facts are very different. Based on the information given to the police by Susan about Elliot's violent nature, officers were justified in thinking that someone in the room might be hurt or held against his or her will. Elliot closed the door after him and would not respond when the officers asked him if anyone else was in the room. An officer testified that he did not know at the time that Susan was safe and that he believed that Elliot was armed. The officers also did not know whether other people might still be in the motel room, possibly armed. When arrested outside the motel room, no weapon was found on Elliot's person, but a pistol was later recovered in the room.

Officers summoned the motel manager, who unlocked the door. The officers entered with guns drawn, looking for other persons who might be hiding there. No other persons were found and the officers were leaving when an officer observed the items that were seized and eventually identified as components and equipment used in manufacturing methamphetamine. Based on this evidence, the trial court

was authorized to conclude that the officers were justified in conducting a "protective sweep" of the motel room. The trial court did not err in denying Elliot's motion to suppress.

3. In Elliot's last enumeration of error, he maintains that the trial court abused its discretion by failing to consider imposing a lesser sentence.

We have vacated and remanded sentences when the record shows that the trial court did not recognize its discretion to probate or suspend a sentence under the provisions of OCGA § 17-10-7 (a). See, e.g., *Minter v. State*, 245 Ga. App. 327, 330 (5) (537 SE2d 769) (2000) (full concurrence in majority opinion); *Bradshaw v. State*, 237 Ga. App. 627, 629-630 (2) (516 SE2d 333) (1999). But here, the prosecutor reminded the trial court of its discretion to probate or suspend part of the sentence under OCGA § 17-10-7 (a).

Elliot was sentenced under the recidivist statute, OCGA § 17-10-7, to 40 years without parole. He has two prior drug convictions for sale of methamphetamine. The maximum sentence permitted under OCGA § 16-13-30 (d) is therefore life without parole, and the State requested the imposition of that sentence. By sentencing Elliot to a 40-year term of confinement, the judge showed that he not only considered, but imposed, a sentence less than the maximum. Moreover, the trial court placed on the record his concerns about the "rampant" nature of the methamphetamine problem and the fact that Elliot's participation in it was "extreme and often."

Elliot points out that, over objection, the trial court considered an uncertified Arkansas docket sheet in aggravation of sentence. The State represented — and the trial court may have believed — that the document in issue had been certified. More important, perhaps, is the State's apparent concession that the trial court improperly considered State's Exhibit 56, a certified copy of Elliot's Tennessee conviction and sentence for felony receiving/concealing stolen property. The State points out that the face amount in the Tennessee indictment is $200, but the minimum amount required for such an offense to constitute a felony in Georgia is $500. It is therefore possible that the Tennessee conviction does not qualify as a prior felony in Georgia for purposes of the recidivist statute. See *Lewis v. State*, 263 Ga. App. 98, 99-100 (2) (587 SE2d 245) (2003). Even though Elliot did not object or raise this on appeal, the State also concedes that from its reading of *Lewis*, supra, and *Woodson v. State*, 242 Ga. App. 67 (530 SE2d 2) (2000), "it appears . . . that this constitutes a failure of proof that need not be urged at any time by an appellant." Id. at 70 (4). We agree with the State, and we therefore remand this case to the trial court for resentencing.

*Judgment of conviction affirmed and case remanded for resentencing. Ellington and Adams, JJ., concur.*

DECIDED JUNE 28, 2005.

*Brian M. House*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, John L. O'Dell, Assistant District Attorney*, for appellee.