A89A0539. THE STATE v. COMBS et al.
(382 SE2d 691)

BENHAM, Judge.

Appellees Combs and Hurley were arrested for trafficking in cocaine and possession of a firearm in the commission of a felony. They moved to suppress the evidence obtained, cocaine and firearms and other weapons, contending that the items were the fruits of an illegal, warrantless, pre-arrest search. The parties agreed that the only issue before the trial court was whether the officer in question had probable cause to search appellees' vehicle. The trial court heard the evidence and ruled in favor of appellees. The State appeals, and we affirm.

1. Appellant contends that appellee Hurley did not have standing to contest the search of the vehicle in which the contraband and weapons were found. We find no merit in this enumeration. It is undisputed that Hurley was driving the vehicle when the trooper pulled it over, and he testified that he had driven it for most of the trip and had clothing and personal items in the vehicle. Even though Combs may have been the one who borrowed the vehicle from a third party, Hurley's status as driver of the vehicle would have given him sufficient authority over it to consent to a search. See *Pupo v. State*, 187 Ga. App. 765 (5) (371 SE2d 219) (1988). Given that authority and the

fact that Hurley had personalty in the automobile, we find that he did have a possessory or privacy interest in the vehicle and therefore had standing to complain that the search violated his Fourth Amendment rights. The State's reliance on *Mecale v. State*, 186 Ga. App. 276 (367 SE2d 52) (1988), is misplaced, because the person who was found in that case to have no standing was "a mere passenger."

2. The State takes the position that Bennett, the trooper who stopped and searched appellees' vehicle, had probable cause to conduct the warrantless search based on the information he obtained from appellees. At the suppression hearing, Bennett testified that he originally observed the vehicle traveling north on I-95 and that it weaved across the white line on the far right-hand side of the highway. He observed it weaving two more times, and had the driver pull the automobile over to the side of the highway approximately two miles from the point at which he first saw it. The vehicle's movements made him think that there might be "an equipment violation or a violation concerning the driver's condition." The trooper stopped the vehicle because it was weaving; he had no intention to search the vehicle. When he asked the driver, Hurley, for his driver's license, he produced it. The driver's license appeared to be in order, and Hurley did not appear to be under the influence of drugs or alcohol. When the trooper explained the reason for having stopped the vehicle, he said that Hurley told him the right front tire had been replaced during the trip and was causing the car to pull to the right. The trooper checked the tire and noted that it appeared to be newer than the other three. He questioned Hurley about his itinerary, and Hurley said they had been in Ocala for four days visiting his family. When the trooper asked for the vehicle registration, Hurley said that it was in the car and that Combs, the passenger, had borrowed the vehicle. The trooper then checked with Combs, who was seated in the front passenger seat. Combs got the registration out of the glove compartment and gave it to the trooper, who noticed that there was a gun in the glove compartment. When the trooper inquired about the gun, Combs denied ownership of it, saying that Hurley had gotten it from someone in Florida or Kentucky. According to Bennett, Combs also denied having obtained the vehicle and, when asked, did not give the correct name of the person to whom the vehicle was registered, nor did he give the same information about their travels that Hurley had given. The trooper told Hurley that something was wrong and that he was going to search their car. It is undisputed that appellees did not give permission for the search, which yielded cocaine found in a travel bag in a suitcase in the trunk of the car. Guns and knives were also found in the car, and a knife was found on Combs' person. Appellees were then arrested.

Trooper Bennett testified that he based his decision to search on

the inconsistent information appellees gave concerning their travels, how they came to have the vehicle, and the presence of the gun in the glove compartment. He felt that the vehicle and/or the gun might have been stolen. Before the search, a check on the vehicle did not produce a report of theft, but he felt that he had probable cause to search because the men were in somebody's car other than their own; that "something was amiss"; and that the search might produce "fruit or roots . . . of other crimes. . . ." There was nothing to indicate that the gun in the glove compartment was stolen except that appellee Combs appeared "nervous" when the weapon was exposed to the trooper's view.

The defendants gave a different version of the encounter. They testified, inter alia, that the car was not weaving; that the trooper did not exit his vehicle until two other officers arrived on the scene; that the search of the car was conducted at gunpoint; that there was no discrepancy in the information given about how and from whom the vehicle was obtained; and that they were not asked for that information until after the search was conducted. The trial court, considering the evidence in the light most favorable to the State, found that even if its "sole motivation were to rationalize the existence of probable cause, and thus hold the defendants accountable for their misdeeds, it would transgress the outermost limits of intellectual honesty to do so under these circumstances. Such a finding would . . . be an unprecedented expansion of the parameters of probable cause. . . . [A] strong reason to suspect that something is amiss is not tantamount to the existence of probable cause." The court granted defendants' motions to suppress the evidence.

"On appeal, a trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted unless clearly erroneous. [Cits.]" *Lombardo v. State*, 187 Ga. App. 440 (1) (370 SE2d 503) (1988). "In the absence of evidence of record demanding a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress. [Cit.]" *State v. Betsill*, 144 Ga. App. 267, 268 (240 SE2d 781) (1977). While the trooper's initial detention of the vehicle may have constituted a bona fide traffic stop based on the observed "weaving" (*Pupo v. State*, supra, Division 1), the trial court, having had the opportunity to observe the witnesses' demeanors and hear their testimony, found that the evidence was insufficient to support a finding of probable cause to search the vehicle. We agree. Id. Division 2. "Probable cause means less than a certainty but more than mere suspicion or possibility. [Cit.] Mere speculation, rumor or opinion is not enough; there must be reasonable grounds after inquiry. [Cit.]" *Yocham v. State*, 165 Ga. App. 650 (3) (302 SE2d 390) (1983). " '(P)robable cause does not demand the certainty we associate with formal trials, [cit.][,] [but there must be] a 'fair

probability that contraband or evidence of a crime will be found in a particular place.' [Cit.]" *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984). Feelings that something is "wrong" or "amiss," like inarticulate hunches, are not sufficient to justify a seizure under the Fourth Amendment. That Trooper Bennett's feelings about appellees proved correct is perhaps a tribute to his policeman's intuition, but it is not enough to justify, after the fact, a search and seizure that was objectively unreasonable at its inception. The record does not contain evidence demanding the conclusion that Bennett had a reasonable suspicion that appellees were carrying drugs, and so the search and seizure cannot be upheld on that ground. *Tarwid v. State*, 184 Ga. App. 853, 856 (363 SE2d 63) (1987).

*Judgment affirmed. Birdsong, J., concurs. Deen, P. J., concurs in judgment only.*

DECIDED MAY 22, 1989.

*Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney*, for appellant.

*Grayson P. Lane, Randall M. Clark*, for appellees.