A89A1158. THE STATE v. ESCOBAR.
(388 SE2d 534)

SOGNIER, Judge.

The State appeals from the trial court's grant of Javier Escobar's motion to suppress.

At the hearing on the motion, Trooper Rick Ogden of the Georgia State Patrol testified that while on regular patrol on Interstate 95 in Camden County he observed a Dodge van with a New York license plate travel approximately forty yards some two to three feet inside

the emergency lane. Ogden decided to stop the vehicle and called for backup before activating his blue lights, after which the van stopped. Ogden asked the driver, appellee, to step to the rear with his driver's license, at which time Ogden noticed that appellee's eyes were "real bloodshot" and that he was "somewhat unsteady on his feet." Appellee produced a Massachusetts driver's license and the New York registration to the vehicle. Ogden then noticed a strong smell of alcohol about appellee's person and tested appellee with an alcosensor pretest device which indicated appellee had .12 grams percent alcohol in his blood. Ogden arrested appellee for driving under the influence, searched him for weapons, and then seated him in the rear of the patrol unit. Ogden could not recall whether he put handcuffs on appellee.

Trooper Ogden had ascertained that no one else was in the van when Deputy Sheriff Wade English of the Camden County Sheriff's Department arrived, and the officers decided to search the vehicle in order to find evidence such as cans or bottles that would indicate whether appellee had been drinking. It is not asserted that appellee consented to the search, and both officers stressed in their testimony that they were not conducting an inventory search of the vehicle. Further, Ogden testified he had called a wrecker service soon after appellee was placed under arrest since there was no one else to take custody of the vehicle. During the search, Trooper Ogden examined the passenger compartment and discovered several beer cans therein while Deputy English examined the outside of the van with a flashlight. English noticed that the body side molding on the van's left side looked crooked. He then grabbed the misaligned piece of molding and pulled, removing a six foot piece of molding from the outside of the van. The molding had been attached to the van with Velcro, which Ogden said was not visible on the outside of the molding but which English testified was slightly visible. By pulling the molding off, a crack of approximately one inch near the bottom of the van was revealed. English shined his flashlight into the crack and observed yellow and brown wrapped material. The compartment was later accessed by drilling into the vehicle, and eighteen individually wrapped kilogram packages of cocaine were recovered.

Ogden testified that he made the search incidental to the custodial arrest of appellee on the DUI charge. When questioned by the trial court as to why he pulled the molding off the van, English testified that he did so because he saw something "that was not right on the vehicle in my experience, something that I thought needed to be checked. I did not know what was in, why it was like that, and what was in there. I thought it needed to be investigated."

Pretermitting arguments regarding the alleged pretextual nature of the stop, even assuming the search was conducted pursuant to a

lawful stop and arrest, we agree with the trial court that the aspect of the search involving the removal of the six foot strip of body molding, in turn revealing the cracked access to the contraband compartment, was illegal. The rule established in *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981) is that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," (footnotes omitted) because that is the area into which an arrestee might reach in order to grab a weapon or evidence of the crime for which he was arrested. Id. at 460. Here, however, while lawfully searching the van either to remove any weapons or to obtain evidence relevant to the crime for which appellee had been charged, i.e., DUI, Deputy English stepped outside the parameters of a legal search when he pulled the body molding from the vehicle. Even the State does not suggest that the removal of the body molding was part of the deputy's search for weapons or evidence of the crime for which appellee was stopped, and English's own testimony reveals that his action was not the result of any suspicion, based on training or prior experience, that contraband would be found behind the body molding. "Feelings that something is 'wrong' or 'amiss,' like inarticulate hunches, are not sufficient to justify a seizure under the Fourth Amendment." *State v. Combs*, 191 Ga. App. 625, 628 (382 SE2d 691) (1989). Nor are we able to find that English's actions fall within the "plain view" doctrine. In *Arizona v. Hicks*, 480 U. S. 321 (107 SC 1149, 94 LE2d 347) (1987), the U. S. Supreme Court determined that an officer's action in picking up a piece of expensive stereo equipment simply to record the serial number while conducting a search of the "squalid" apartment for evidence relating to a shooting, id. at 323, did not fall within the "plain view" doctrine and thus was a constitutionally impermissible search. In view of the facts in the case at bar, where the contraband could not be seen by "cursory inspection," id. at 328, but rather could be seen only after the deputy detached a six foot strip of molding in order to reveal the crack that gave visual access to the contraband, we are constrained to agree with appellee that this search falls squarely within *Arizona v. Hicks*, as the deputy's "moving of the [molding] . . . did constitute a 'search' separate and apart from the search for [weapons or evidence of appellee's DUI] that was the lawful objective of his [search of the vehicle.]" Id. at 324-325. Nor was the deputy "[m]erely inspecting" the van during the authorized search pursuant to a lawful arrest when he pulled the six feet of body molding off the van. Id. at 325. Compare *State v. Field*, 188 Ga. App. 639 (373 SE2d 815) (1988). Rather, it is apparent Deputy English was "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the [van] or its contents, [and thereby] did produce

a new invasion of [appellee's] privacy unjustified by the exigent circumstance that validated the [search incident to a lawful arrest.]" *Arizona v. Hicks*, supra at 325.

" 'Factual and credibility determinations . . . made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. (Cits.)' [Cit.]" *State v. Louis*, 185 Ga. App. 529, 530 (364 SE2d 896) (1988). " 'In the absence of evidence of record demanding a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress. (Cit.)' [Cit.]" *State v. Combs*, supra at 627. The trial court's grant of appellee's motion to suppress was not clearly erroneous and therefore we will not disturb it on appeal.

*Judgment affirmed. Banke, P. J., and Pope, J., concur specially.*

POPE, Judge, concurring specially.

I am constrained by the ruling of the United States Supreme Court in *Arizona v. Hicks*, 480 U. S. 321 (107 SC 1149, 94 LE2d 347) (1987) to concur with the affirmance of the trial court's order suppressing the evidence of contraband in this case. I lament with Justice Scalia that "[i]t may well be that . . . no effective means [to investigate suspicious circumstances] short of a search exist. But there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Id. at 329.

As illustrated by this and other recent cases (see *Amato v. State*, 193 Ga. App. 459 (___ SE2d ___) (1989), drug traffickers are becoming more ingenious in their methods of concealing contraband in such a way that no ground exists for an investigating officer to find probable cause to conduct a warrantless search. Yet this officer may have a strong inarticulable hunch, based on extensive experience in law enforcement, that a situation is suspicious or the circumstances amiss. As here, the contraband may be concealed in such a way that the search cannot be justified under the several exceptions permitting warrantless searches. The "automobile exception" still requires probable cause to believe evidence of a crime is in the vehicle. See *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1924). A search of the passenger compartment of the automobile may be made incident to a lawful arrest but such a search may not extend to compartments of the automobile not accessible to the arrestee. See *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969). The "plain view" doctrine requires that the object in plain view must, without further manipulation or search by the officer, establish probable cause to seize the plainly visible evidence. See *Arizona v. Hicks*, supra. Even consent may not justify the search if it does not expressly extend to the particular area searched. See *State v. Diaz*, 191 Ga.

App. 830 (383 SE2d 195) (1989).

On the one hand, innocent individuals should not be subject to intrusive, property-damaging searches on a mere suspicion that something in or on the automobile is amiss. On the other hand, we cannot afford to allow drug traffickers, lawfully detained for an investigative stop or for some other unrelated offense, to be released to spread their poison in our society because they were clever enough to conceal their contraband in such a way that it does not arouse a suspicion sufficient to establish probable cause for a search. The investigating officer needs a practical solution to the problem identified by Justice Scalia — an effective means, short of an unconstitutional search, to investigate suspicious circumstances. The United States Supreme Court has held that exposure of personal effects located in a public place to a trained canine does not constitute a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U. S. 696 (103 SC 2637, 77 LE2d 110) (1983). Thus, the solution I propose is that a drug-sniffing dog accompany each officer patrolling a highway known to be a drug corridor. The positive reaction of a drug-sniffing dog would have provided the probable cause necessary in this case to search areas of the vehicle not otherwise subject to a search incident to the lawful arrest of the driver.

I am authorized to state that Presiding Judge Banke joins in this special concurrence.

DECIDED NOVEMBER 14, 1989.

*Glenn Thomas, Jr., District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellant.
*Grayson P. Lane*, for appellee.