A92A2023. IN THE INTEREST OF S. B., a child.

(427 SE2d 52)

BEASLEY, Judge.

The State appeals from the juvenile court's grant of the minor appellee's motion to suppress. The motion asserted that as the result of an illegal vehicle stop, officers recovered a gun allegedly stolen in a burglary and arrested the juvenile for theft by receiving. OCGA § 16-8-7.

The motion hearing was not transcribed, but the parties stipulated the facts established by the testimony. OCGA § 5-6-41 (g). Two female county plain-clothes detectives, who were driving an unmarked police car, saw two white male teenagers sitting in an automobile parked on the wrong side of the road in downtown Brunswick at about 1:00 on a weekday afternoon. The officers thought this "just did not look right" because they were in a predominantly black neighborhood which was a high crime and drug area. Driving past the suspicious car, they pulled over to the side of the road to observe it. The boys drove away, turned right at the next intersection and, when the detectives followed, stopped on the right side of the road. After the detectives passed the car, then backed up and parked behind it, the boys moved off and turned at the next corner, then stopped again.

The detectives did not follow but remained in place and called in the tag number of the boys' car. Appellee left the car and walked around the corner back towards the unmarked police car to offer his driver's license and insurance card. When the detectives were notified by police radio dispatch that appellee's car had been stopped by a patrolman a short time earlier, they got out of their car to talk to the

boys. Appellee told them he had just dropped off a friend known as "Teddy Bear" who lived in the neighborhood. The detectives had previously received information that "Teddy Bear" was in possession of guns stolen from a local hardware store. The detectives learned that the car belonged to appellee and asked for his consent to search it. He replied, "Have at it." A .22 caliber pistol which had been reported stolen was found under the driver's seat.

The juvenile court granted the motion to suppress, without stating a reason. The parties stipulated that the ground was that the detectives had unintentionally effectuated a stop without any suspicion of wrongdoing by appellee and his friend. Assuming this to have been the court's basis, " '[i]n the absence of evidence of record demanding a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress. (Cit.)' [Cit.]" *State v. Combs*, 191 Ga. App. 625, 627 (2) (382 SE2d 691).

The State contends that the actions of the detectives should not be construed as constituting an unlawful detention under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); and even if they did unintentionally make a stop, the search and seizure of the stolen gun were not necessarily invalidated as only an articulable suspicion of a violation was required for a valid stop and the appellee consented to the search of his car. Under the facts stipulated, no unlawful *Terry* stop has been shown, and the subsequent search and seizure were consensual and valid.

"Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. . . . [Appellee and his companion] were not unlawfully detained under *Terry v. Ohio*, supra; they were subjects of a permissible police and citizen encounter involving no coercion or detention. . . . Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. . . . *United States v. Mendenhall*, (446 U. S. 544 (100 SC 1870, 64 LE2d 497, 509) (1980))." (Citations, indention and punctuation omitted.) *State v. Jackson*, 201 Ga. App. 810, 813-814 (2) (412 SE2d 593) (1991).

The detectives employed no physical force or show of authority

to restrain appellee's freedom of movement; at no time did they attempt to detain him. He voluntarily stopped after having driven away, and he approached the officers without their bidding and initiated the production of his driver's license and proof of insurance, apparently aware he was under police surveillance. The record conclusively establishes that appellee was not initially stopped and detained by the detectives for any purpose whatsoever. *O'Donnell v. State*, 200 Ga. App. 829 (1) (409 SE2d 579) (1991).

The facts stipulated also show that appellee voluntarily agreed to allow the search of his car. "[M]erely approaching an individual and requesting that he give his consent for a search does *not* constitute a seizure and need *not* be supported by an articulable suspicion. '(E)ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, (cits.); and request consent to search . . ., (cit.) — as long as the police do not convey a message that compliance with their requests is required.' *Florida v. Bostick*, 501 U. S. ___, ___ (111 SC 2382, 115 LE2d 389, 398) (1991).

"Accordingly, the validity of a warrantless consent search is ultimately dependent upon whether the officer's conduct during the encounter was such as to demonstrate the effectuation of a non-consensual 'seizure,' not upon whether the initiation of the encounter has been authorized by the officer's possession of an 'articulable suspicion.' . . . '[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," (cit.), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.' *Florida v. Bostick*, supra at 398. '(T)he existence of an articulable suspicion would have to be shown *if* the State had been seeking to uphold the search as the non-consensual product of an initial seizure of appellee. However, the State was *not* seeking to do so. It was the State's position that the search was the consensual product of a mere verbal encounter which had involved no initial seizure of appellee and which need not have been supported by the existence of an articulable suspicion.' (Emphasis in original.) [Cit.] Thus the trial court erred insofar as it predicated the grant of appellee's motion upon the lack of an 'articulable suspicion' to initiate the encounter." (Emphasis in original.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992). The same result is compelled in this case.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JANUARY 11, 1993.

W. Glenn Thomas, Jr., District Attorney, Stephen D. Kelley, Assistant District Attorney, for appellant.

Susan E. Perry, for appellee.