## A97A0302. ARANDA v. THE STATE.
### (486 SE2d 379)

BEASLEY, Judge.

After a stipulated bench trial, Aranda was convicted on one count of trafficking in cocaine by possessing more than 400 grams with a purity of more than ten percent. OCGA § 16-13-31 (a) (1) (C). He enumerates four errors in the court's denial of his motion to suppress evidence seized, in what he contends was a search violative of the Fourth Amendment to the United States Constitution. "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. [Cit.]" *Burse v. State*, 209 Ga. App. 276 (433 SE2d 386) (1993).

Agent Johnson of the Drug Enforcement Administration and Sergeant Hogan of the Fayette County Sheriff's Department had received information that Aranda had purchased a one-way airplane ticket from Los Angeles to Atlanta shortly before take-off with cash, behavior sometimes indicative of a drug courier. Johnson had worked on the airport drug task force for approximately 12 years and knew Los Angeles as "a drug-source city." The officers identified Aranda's lone piece of luggage, a small tote bag, before it was placed in the baggage claim area. When Aranda retrieved the bag the officers approached him, identified themselves, and asked to speak with him, to which he agreed. Johnson asked to see his ticket, and Aranda gave it to him. Johnson asked if his name was Abel Aranda, the name on the ticket, and he responded "Yes, it is." Johnson returned the ticket and asked for identification. Aranda produced a California driver's license. Johnson returned it and spoke with Aranda about his travel plans. Almost from the first, Aranda appeared nervous and began sweating and shaking. Johnson said he and Hogan were looking for drugs being brought through the area and asked if "you mind consenting to a search of your person and your checked bag here?" Aranda said it was "okay."

A search of the bag produced no drugs but Johnson concluded the bag did not contain enough clothes for the one-week visit Aranda said he was making to Atlanta. When Johnson put the bag down,

Hogan asked if he could perform a "pat down" of Aranda's "outer clothing" and said he was not under arrest. Aranda again said "okay" and continued to appear nervous; he was pale, his knees shook, and he visibly slumped. Hogan patted him down and detected through his shirt something that felt like cardboard, "definitely something out of the ordinary." Hogan asked what it was but Aranda looked down and either did not respond or said "nothing." His mouth dropped open and his nose bore perspiration. Hogan looked into the shirt, saw something he could not identify, and unbuttoned the shirt, revealing packages of cocaine strapped to Aranda's body.

Aranda testified that his driver's license was never returned to him, that he had given consent to a search of his bag but not his person, and that when he was asked if it was okay to pat him down, he made no response. He said he did not leave because the officers held his driver's license, had him "surrounded," and "[t]hey knew everything."

1. Aranda contends the court should have held that the officers' approach and questioning of him was a seizure within the meaning of the Fourth Amendment. " 'Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.' [Cit.]" *In the Interest of S. B.*, 207 Ga. App. 60, 61 (427 SE2d 52) (1993). The court ruled that the encounter was of the first type, a police-initiated engagement in conversation which progressed to a consensual search for evidence of a crime.

This was not error. " ' "(A) person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. (Cits.) In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. . . ." [Cit.]' [Cit.]" *State v. Jackson*, 201 Ga. App. 810, 814 (2) (412 SE2d 593) (1991). "It is clear . . . that merely approaching an individual and requesting that he give his consent for a search does *not* constitute a seizure and need *not* be supported by an articulable suspicion. 'Even when officers have no basis for suspecting a particular individual, they

may generally ask questions of that individual, (cits.); ask to examine the individual's identification, (cits.); and request consent to search . . ., (cit.) — as long as the police do not convey a message that compliance with their requests is required.' [Cit.]" (Emphasis in original.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992).

Contrary to Aranda's contention, this is not a case in which the suspect had been seized by the removal of his ticket or identification. Johnson testified Aranda's ticket and driver's license were promptly returned. Even Aranda's testimony, if believed, does not show circumstances that would create a seizure. Unlike the evidence in *United States v. Elmore*, 595 F2d 1036, 1039-1042 (5th Cir. 1979), Aranda did not testify the officers removed either his ticket or license from the immediate vicinity.

The officers' conduct was not offensive or overbearing. What governs is not whether Aranda subjectively thought he was not free to leave but rather whether a reasonable person would have believed such, given the conduct of the officers and the surrounding circumstances. The court did not err in finding the encounter did not constitute a seizure. As such, reasonable suspicion was not required as support for the encounter under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

2. Aranda also contends the search exceeded the extent of any consent to a patdown search of his outer clothing. He bases this on Hogan's testimony that, just before performing the patdown, he told Aranda it would not be "a very detailed search," it would be "just a patdown of his outer clothing" and Aranda argues that the officers had no specific consent to go inside his shirt.

Johnson's testimony was that Aranda consented to a search of his person and bag before either was searched. That Hogan asked for patdown consent before placing his hands on Aranda does not eliminate or narrow Aranda's earlier, more general consent to a search of his person. " 'A consent search is one undertaken with knowledge and without objection by the defendant. Once consent is legally obtained, it continues until it is either revoked or withdrawn. [Cit.]' [Cit.]" *Woods v. State*, 258 Ga. 540, 542 (2) (371 SE2d 865) (1988). "At no time did [Aranda] 'verbalize' a withdrawal of the consent he had given." *Ortiz v. State*, 189 Ga. App. 428, 429 (375 SE2d 891) (1988). Neither did he do anything which signalled a withdrawal.

Even if consent was limited to a patdown, investigating the suspicious cardboard-like object which the officer felt under Aranda's shirt would not surpass the scope of that search. The consent given did not restrict the patdown to one for weapons. See *Rolle v. State*, 198 Ga. App. 507, 509 (2) (402 SE2d 106) (1991). This was not a patdown for weapons as a precaution for the officers' safety. They told Aranda they were narcotics officers looking for drugs and asked for

his consent to search in pursuit of that goal. He gave it.

This is not to say that, absent consent, the invasion beyond the outer clothing to the point at which suspected cocaine powder was "plainly seen" in a plastic bag would have met constitutional muster. Feeling "something like cardboard" did not equate to touching an object whose identity as contraband is immediately apparent. See *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) (1993); *Seaman v. State*, 214 Ga. App. 878, 879-880 (2) (449 SE2d 526) (1994).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED APRIL 10, 1997.

Before Judge Kilpatrick.

*Richard Genirberg*, for appellant.

*Robert E. Keller, District Attorney, Brian J. Amero, Assistant District Attorney*, for appellee.