A98A2018. CORLEY v. THE STATE.
(512 SE2d 41)

SMITH, Judge.

Lester Leshon Corley was indicted on one count of trafficking in cocaine, OCGA § 16-13-31 (a). After his motion to suppress was denied, he stipulated to the remainder of the evidence, and the trial court convicted him of possession with intent to distribute cocaine. Corley appeals the judgment of conviction and sentence, contending that the trial court erred in denying his motion to suppress. Because we find that the warrantless search of Corley's pocket was made without his consent and cannot be justified under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), we reverse.

In reviewing a motion to suppress, "[t]he evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639) (1990).

The evidence presented at the hearing on the motion to suppress showed that Georgia State Patrol Officer William Hitchens stopped Corley at a roadblock set up to check drivers for documentation such as licenses and proof of insurance. Hitchens noticed that Corley was not wearing his seatbelt and asked him for his driver's license. When Corley responded that he did not have his driver's license with him, Hitchens asked him to park his car on the shoulder of the road while he verified whether Corley had a valid driver's license. After determining that Corley had a valid license, Hitchens asked him to step out of his car while Hitchens wrote citations for failure to wear a seatbelt and have a license on his person. Hitchens asked Corley to step out of the car because it was safer for both of them to move away from the road area. Hitchens testified that he planned to release Cor-

ley after writing these citations.[1]

Hitchens was writing the citations in the presence of Corley and another officer, Ben Forehand, when Officer Mercer joined them. Mercer recognized Corley and told the other officers that Corley had been "associated with" or "messed with" controlled substances in the past. Mercer talked with Corley about his past and asked for permission to search his car. When Corley refused, Mercer left to obtain a search warrant after talking with Corley for an additional 15-30 seconds.

Hitchens then started a pat-down search of Corley to ensure that Corley did not have any weapons in his pockets. Hitchens also wanted to make sure he would not have to react in a manner that would harm Corley should Corley reach into his pockets. During this pat-down, Hitchens felt money in Corley's pocket and asked him to remove it because weapons are sometimes hidden behind money.

Officer Forehand testified he saw a "small lump" or "bulge" in Corley's right front watch pocket while Hitchens was counting the money in front of Corley. Forehand pointed it out to Hitchens and asked Corley to remove the object from his pants so "[h]e could see what it was." Corley placed his index finger in the pocket and pushed the object down further into the pocket. Forehand then stated, "Mr. Corley, I asked you to pull it out, not to shove it down further. I want to see what it is." Corley then "raked out" a small bag of green leafy material that appeared to be marijuana and "took off running." After providing this testimony, Forehand agreed with the prosecutor's statement that Corley removed the marijuana voluntarily at Forehand's request.

Forehand testified that after Corley "took off running," the officers chased him and caught him a short distance away. Corley fought with the officers, who used pepper spray to subdue and hand-cuff him. After Corley was arrested and transported to jail, the officers searched his car and found a black bag containing cocaine in the glove compartment.

Corley gave a different version of his encounter with the officers. He testified that he was not asked to step out of his car until after Officer Mercer recognized him and that Officer Mercer, not Officer Hitchens, asked him to step out of his car. At Hitchens's request, Corley walked back toward Hitchens's patrol car. Corley further testified that Hitchens said: "[W]ell I would like to search you, and he searched me. He frisked me down. He frisked me down twice. And he

---

[1] We are therefore not dealing with a search incident to a custodial arrest for a traffic offense. Compare *Baker v. State*, 202 Ga. App. 73, 75 (1) (413 SE2d 251) (1991) ("Appellant's custodial arrest for traffic violations being lawful, the inventory search pursuant to that custodial arrest was valid and appellant's motion to suppress was properly denied. [Cits.]").

took the money out of my pocket, and that's when he began to count the money. And he said, where you going with this money? I said, my grandparents are elderly folks and I pay their bills and I'm going grocery shopping for them. He said, this money — I said they pay their bills due around the first and the middle of the month. I said, but now since my father is not there, he's working, I take care of that. He said, well can I search you? I said, yes, sir. So he searched me. And then that's when Mr. Forehand say well he look like he have something in his pocket. And he said you turn around. That's what he told me. I said, you just searched me. He said, what I told you, you turn around, like that."

Corley testified that after he was directed to turn around, he stated again that he had already been searched and asked "what's going on?" Corley testified that Officer Lanier, who was also present, told him to turn around, stop asking questions and do what he was told to do. After being instructed to pull out the contents of his pocket, Corley complied. Corley denied running away, and he claimed the officers hit him, hog-tied him, and used pepper spray after telling him he was under arrest. After providing this testimony, Corley agreed during cross-examination that he had consented to a pat-down search by the police officers.

After hearing this evidence, the trial court entered a written order denying the motion to suppress. The order recites: "Trooper Hitchens conducted a pat down of the defendant and removed a small lump from the defendant's watch pocket which appeared to be marijuana." The trial court did not determine whether Corley voluntarily consented to the search of his right front watch pocket.

1. On appeal, Corley contends the trial court erred when it denied his motion to suppress because the searches of his person and his automobile were without probable cause. The State asserts that the search of Corley's person was warranted based upon officer safety and Corley's consent.

(a) The officers were authorized to conduct a pat-down search of Corley's person to ensure that he was unarmed. *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991). But even if Corley's compliance with the officer's direction to empty his pocket is characterized as a search of Corley's watch pocket, it cannot be justified as a frisk for weapons under *Terry v. Ohio*, supra. "A frisk involves the patting-down of a person's outer clothing by a police officer. Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial. It must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. In other words, an extended search, exceeding the purpose of the frisk, would

be constitutionally unreasonable, and any evidence thereby obtained must be excluded.

In *Terry v. Ohio*, supra, the court's emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon. An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down." (Citations and punctuation omitted.) *Clark v. State*, 208 Ga. App. 896, 900-901 (2) (432 SE2d 220) (1993).

The record in this case contains no testimony or facts showing that any of the officers felt a bulge in Corley's watch pocket that they believed to be a weapon. It shows only that the officers saw the bulge after completing their frisk of Corley. No evidence was presented that the appearance of the bulge led the officers to believe it was a weapon. And the record does not show that Corley acted in a manner that led the officers to believe he was hiding a weapon in this pocket *before* he was asked to show the officers the contents of his watch pocket. Compare *Pace v. State*, 219 Ga. App. 583 (466 SE2d 254) (1995) (officer authorized to reach into pocket of defendant when defendant tried to reach into his pocket several times and officer reasonably believed defendant was reaching for a weapon).

As a result, the officers were not authorized under *Terry v. Ohio*, supra, to intrude into Corley's watch pocket by directing him to remove its contents. *State v. Williams*, 220 Ga. App. 100, 101-102 (1) (469 SE2d 261) (1996); *Barrett v. State*, 212 Ga. App. 745, 748-749 (443 SE2d 285) (1994).[2]

(b) Our analysis does not end here, however, because the State contends the search was consensual. "The State has the burden of proving the validity of a consensual search and must show the consent is given 'voluntarily.' *Schneckloth v. Bustamonte*, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973); *Williams v. State*, 251 Ga. 749 (312 SE2d 40) (1983)." *Clemow v. State*, 196 Ga. App. 533 (1) (396 SE2d 302) (1990). The consent is not voluntary if it is " 'the result of duress or coercion, express or implied.' " *Code v. State*, 234 Ga. 90, 93 (214 SE2d 873) (1975).

"Normally we would rely upon the decision of the fact finder to

---

[2] The State does not assert that the search was warranted by the "plain feel" doctrine established in *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) (1993), and there is no evidence in the record that warrants the application of this doctrine. See *Williams*, supra.

determine the issue of consent, and if there was any evidence to support that finding the appellate court would not reverse such finding. [Cit.]" *Radowick v. State*, 145 Ga. App. 231, 239 (4) (244 SE2d 346) (1978) (physical precedent only). See also *Howie v. State*, 218 Ga. App. 45, 46 (3) (459 SE2d 179) (1995). But in this case, the trial court did not reach the issue of Corley's consent because the trial court erroneously found that the officer felt the lump in Corley's watch pocket during the frisk of Corley. Since the evidence is in conflict, we could remand this case to the trial court for a finding on the issue. See, e.g., *Simmons v. State*, 223 Ga. App. 781, 782-783 (479 SE2d 123) (1996). Our review of the record, however, persuades us that under either version of the facts Corley did not consent to the search of his watch pocket.

We are required to scrutinize closely an alleged consent to search. *Code*, supra. The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. *McGaughey v. State*, 222 Ga. App. 477, 479 (474 SE2d 676) (1996). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect." Id. The "appropriate inquiry is whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter." (Citations and punctuation omitted.) *Weeks v. State*, 206 Ga. App. 431, 433 (425 SE2d 421) (1992).

The record in this case shows that none of the officers ever claimed Corley consented to a search of his person. Instead, they testified that Corley was patted down to ensure he did not have any weapons. The only mention of consent comes from Corley's own testimony, and it is unclear whether he consented to a search before or after Officer Hitchens found the money.

The scope of his consent is also ambiguous. Corley's response during cross-examination by the State suggests he consented to a pat-down search only. What is clear, however, is that Corley either verbally questioned the first request to empty his watch pocket or refused to comply before being ordered unequivocally to do so. We are persuaded that a reasonable person would not have felt free to decline the repeated request to empty the pocket.

After considering the totality of the circumstances of this case, we find that the State has not met its burden of showing Corley voluntarily consented to the search of his watch pocket. See *Rogers v. State*, 206 Ga. App. 654, 660-661 (426 SE2d 209) (1992). Corley's acquiescence to a repeated order to show the officers the contents of his watch pocket cannot be construed as voluntary consent. It is well settled that acquiescence cannot substitute for free consent. *State v.*

*Westmoreland*, 204 Ga. App. 312, 313 (2) (418 SE2d 822) (1992); *Miranda v. State*, 189 Ga. App. 218, 221 (3) (375 SE2d 295) (1988); *State v. Avret*, 156 Ga. App. 527 (275 SE2d 113) (1980).

Our decisions in *Aranda v. State*, 226 Ga. App. 157, 159 (2) (486 SE2d 379) (1997); *Harris v. State*, 205 Ga. App. 813, 814 (423 SE2d 723) (1992); and *Conley v. State*, 180 Ga. App. 662, 663-664 (350 SE2d 45) (1986), do not alter this result. In each of those cases, unlike this one, the accused first explicitly gave consent for a search of his person; no evidence was presented that the defendant withdrew this consent or did anything that signaled a withdrawal before the contraband was revealed. In contrast, Corley first acted in direct disobedience of the officers' request to empty his pocket before reluctantly complying.

2. The illegal search of Corley's watch pocket tainted all evidence obtained as a result of this search. *Phillips v. State*, 167 Ga. App. 260, 261-262 (1) (a) (305 SE2d 918) (1983). Because this illegal search resulted in his arrest and the search of his car for inventory purposes incident to that arrest, the trial court erred when it denied Corley's motion to suppress the cocaine found in his car. See generally *Lackey v. State*, 246 Ga. 331, 333 (2) (271 SE2d 478) (1980); *Phillips*, supra. The trial court erred when it convicted Corley based upon evidence that should have been suppressed and excluded from evidence. See *Kelleher v. State*, 187 Ga. App. 811 (2) (371 SE2d 450) (1988).

*Judgment reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 8, 1999.

*Larsen & Larsen, W. W. Larsen, Jr.*, for appellant.
*Richard A. Malone, District Attorney, Jennifer E. Hildebrand, Assistant District Attorney*, for appellee.